UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JEFFREY DECKER, et al.,<br>    Plaintiffs,<br><br>        vs.<br><br>CHUBB NATIONAL INSURANCE CO., et al.,<br>    Defendants. | Case No. 1:15-cv-88<br>Dlott, J.<br>Litkovitz, M.J.<br><br><br>**REPORT AND<br>RECOMMENDATION** |

On September 8, 2015, the Court ordered the parties to submit briefs on plaintiffs' request for complete and unredacted production of the claims file documents in this matter. (Docs. 19, 20, 21). This matter has been referred to the undersigned magistrate judge for a Report and Recommendation on the pending discovery dispute. (Doc. 22).

**I. Background**

On January 10, 2014, a fire caused significant damage to plaintiffs' residence and property. Plaintiffs carried insurance underwritten by defendants and made a claim for coverage. On January 8, 2015, before defendants had made a decision on coverage, plaintiffs filed the instant lawsuit alleging claims of breach of contract and failure to act in good faith in complying with the terms of the insurance policy. On April 3, 2015, defendants denied plaintiffs' claim for coverage.

As part of their discovery requests, plaintiffs sought the insurance claims file. In response, defendants produced numerous, heavily redacted documents asserting such documents are protected by the attorney-client privilege and as attorney work product. Documents post-dating the service of the complaint on defendants – January 12, 2015 – have been withheld by defendants. Defendants have produced two privilege logs listing: the "Key to Abbreviations"

(including abbreviations for attorney-client privilege, reserves, attorney work product, non-discoverable information, and three categories of "non-relevant" material); the "Key to Author/Recipients"; the page numbers corresponding to the redacted documents in the claims file; and the notations that "redactions have been made to pages noted below in the Chubb National Claim files for privilege assertions" and "[t]he privilege asserted regarding each redaction is set forth on the redacted document using the abbreviations set forth above."

After hearing argument by the parties on the discovery dispute, District Judge Dlott ordered defendants to produce *in camera* to the Court unredacted copies of the documents produced to plaintiffs, as well as those withheld by defendants, on the ground of attorney-client privilege or work product protection, finding that plaintiffs sufficiently asserted a *prima facie* case of bad faith on the part of defendants. Defendants have produced for the Court's inspection documents falling into two categories: (1) documents prepared from the date of loss up to the service of the complaint on defendants (January 14, 2014 through January 11, 2015) (Files 1 through 6); and (2) documents prepared after plaintiffs' complaint was served on defendants through the date of denial of the claim (January 12, 2015 through April 3, 2015) (Files 7 and 8).

Plaintiffs argue the claims file is discoverable under *Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154 (Ohio 2001), which creates an exception to the attorney-client privilege asserted by defendants in this case. Plaintiffs also contend that defendants have not met their burden of showing that the documents are otherwise protected as work product. Defendants contend that the *Boone* exception to the attorney-client privilege applies only where the documents "may cast light" on the bad faith claim alleged by plaintiffs and because defendants can establish a good faith basis for denying the claim, the documents sought by plaintiffs are not relevant and should not be produced. Defendants also assert that even if the *Boone* exception applies, the wholesale

2

disclosure of the claims file is unwarranted. Finally, defendants argue that the Court should not compel disclosure of any documents containing attorney-client communications or work product after plaintiffs filed suit on January 8, 2015.

## II. Attorney-client privilege

The parties agree that Ohio law governs the attorney-client privilege issue in this case. In *Boone,* the Ohio Supreme Court created an exception to the attorney-client privilege for insurance claims file documents where the insured alleged a claim of bad faith denial of coverage:

> [W]e hold that in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage. At that stage of the claims handling, the claims file materials will not contain work product, i.e., things prepared in anticipation of litigation, because at that point it has not yet been determined whether coverage exists.

744 N.E.2d at 158. The Ohio Supreme Court reasoned that claims file documents relating to a claim of a bad faith denial of insurance coverage and generated before a denial decision are not worthy of protection under the attorney-client privilege. *Id. See also Unklesbay v. Fenwick*, 855 N.E.2d 516, 521 (Ohio Ct. App. 2006) ("claims-file materials showing an insurer's lack of good faith in processing, evaluating, or refusing to pay a claim are unworthy of the protection afforded by the attorney-client or work-product privilege").

The *Boone* exception to the attorney-client privilege for claims file information was examined by the Sixth Circuit in *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432 (6th Cir. 2009). In *Professionals Direct*, the Sixth Circuit upheld the trial court's decision to order production of all claims file documents that were created prior to the date of denial of coverage under the *Boone* exception to the attorney-client privilege. The Sixth Circuit rejected Professionals Direct's argument that the court was required to examine each of the disputed documents individually to

3

determine whether they contained evidence of bad faith and were "unworthy of protection" under *Boone*:

> Ohio courts have read *Boone* more broadly than Professionals Direct claims. The leading Ohio Court of Appeals case, *Garg v. State Auto. Mut. Ins. Co*., 155 Ohio App.3d 258, 800 N.E.2d 757 (2003), read *Boone* to require the disclosure of all documents that "may cast light" on whether the insurer acted in bad faith. *Id.* at 763 (emphasis added); *see also Boone*, 744 N.E.2d at 156 ("The issue before us is whether, in an action alleging bad faith denial of insurance coverage, the insured is entitled to obtain, through discovery, claims file documents containing attorney-client communications and work product that *may cast light* on whether the denial was made in bad faith.") (emphasis added). This, we believe, is a reasonable application of *Boone*.

578 F.3d at 442 (citation and footnotes omitted).

This Court, in applying the *Boone* exception to a discovery dispute involving a bad faith denial of insurance coverage claim, stated that "[t]he critical issue is whether the documents 'may cast light' on whether the insurer acted in bad faith." *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07-cv-1285, 2012 WL 1340369, at *4 (S.D. Ohio Apr. 17, 2012) (King, M.J.) (quoting *In re Prof'ls Direct Ins. Co.*, 578 F.3d at 442 (in turn quoting *Garg v. State Auto. Mut. Ins. Co.*, 800 N.E.2d 757, 763 (Ohio Ct. App. 2003))). The Court in *Grange Mutual* noted that "Ohio courts prefer an *in camera* review of these documents before providing them to the opposing party" and ordered the defendant to produce the claims file documents for *in camera* review. *Grange Mut.*, 2012 WL 1340369, at *5. *See also Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. 2:06-cv-899, 2007 WL 1500899, at *5 (S.D. Ohio May 18, 2007); *Unklesbay*, 855 N.E.2d at 523; *The Scotts Co. v. Emp'rs Ins. of Wausau*, No. 14-04-51, 2005 WL 1939422, at *3 (Ohio Ct. App. 2005). The *Boone* exception "does not automatically permit discovery of everything contained in a claims file," such as documents created after the denial of coverage. *Zigler v. Allstate Ins. Co.*, No. 1:06CV2112, 2007 WL 1087607, at *2 (N.D. Ohio Apr. 9, 2007) (quoting *Unklesbay*, 855 N.E.2d at 522 and citing *Boone,* 744 N.E.2d at 159). *See Unklesbay,*

4

855 N.E.2d at 523 (privileged claims file documents created after filing of a lawsuit but prior to receipt of insurance benefits which do not show bad faith in handling claims are not discoverable).

Defendants contend that the *Boone* exception to the attorney-client privilege does not apply in this case because the claims file documents do not "cast light" on whether defendants acted in bad faith. They allege that the Court should first determine:

> whether Chubb National can establish a *prima facie* case that it had a good faith basis to deny the claim. If it did have such a reasonable basis to deny Plaintiffs' claim, it could not have acted in bad faith in doing so. It then follows that any attorney-client communications between claim[s] counsel and Chubb National cannot shed light on whether Chubb National acted in bad faith.

(Doc. 20 at 5). Defendants then present evidence and argument to support their claim that the denial was made in good faith. (Doc. 20 at 5-16, and exhibits attached thereto). Defendants assert that because the denial of plaintiffs' claim was made in good faith based on credible evidence, the Court should conclude that plaintiffs cannot establish a *prima facie* case of bad faith and all claims file documents must be protected from disclosure to plaintiffs.

Adopting defendants' theory to circumvent the *Boone* exception would require the Court to prematurely assess the merits of the claims in this case before discovery has been completed. Defendants essentially argue that plaintiffs are not entitled to compel the discovery they seek because defendants can prove their good faith claim (based on the evidence in defendants' possession) which would make plaintiffs' bad faith claims meritless. Defendants ask this Court to prejudge the merits of their good faith claim and, if it is supported, to deny plaintiffs' request for discovery without giving plaintiffs an opportunity to disprove or challenge those reasons. Defendants have asserted no authority in support of this proposition, nor has the Court been able to find any. More importantly, the claims file may contain evidence that could cast doubt on the

5

reasonableness or legitimacy of the "good faith" reasons posited by defendants for the denial decision.  During the discovery phase of litigation, plaintiffs are entitled to discover information to challenge the "good faith" reasons alleged by defendants.  Defendants' request for a merits-based assessment is premature because "[a] court does not consider the underlying merits of a [party's] claims in evaluating a motion to compel" and arguments directed at the merits of the plaintiffs' claims or the viability of affirmative defenses should be addressed by way of dispositive motion or at trial and not during a discovery dispute.  *See Stafford v. Jewelers Mut. Ins. Co.*, No. 3:12-cv-050, 2012 WL 6568325, at *3 (S.D. Ohio Dec. 17, 2012) (citations omitted).  Indeed, as recognized by Magistrate Judge King in *Grange Mutual*, attorney-client communications are discoverable under the *Boone* exception so long as they "may cast light" on whether the insurer acted in bad faith.  And because this inquiry involves a matter of discovery,

> the Court is not passing judgment as to whether the documents discussed herein ultimately support or undermine the parties' claims or defenses.  Rather, if a document is relevant to the issue of coverage, claim processing, or other bases set forth in [the party's] bad faith claim, then pursuant to the *Boone* standard, it is discoverable.

Opinion and Order of Magistrate Judge King at 2 n.1, *Grange Mut.*, No. 2:07-cv-1285 (S.D. Ohio May 11, 2012), ECF No. 142.  Therefore, the Court declines to assess whether defendants' denial of plaintiffs' claim was made in good faith based on the evidence presented during this discovery dispute.  Defendants assert no other basis for not applying the *Boone* exception to this case.  Accordingly, under the *Boone* exception, the claims file in this case is discoverable despite the fact that it contains attorney-client communications.

Nevertheless, defendants contend that even if the *Boone* exception applies to the documents in this case, there are a "substantial number" of documents in Files 1 through 8 that "are clearly not relevant and do not 'cast light'" on defendants' claim decision-making,

specifically, "the detailed billing invoices from Chubb National's claim[s] counsel." (Doc. 20 at 19).

The detailed billing invoices to which defendants refer are internal audits of legal services invoices related to plaintiffs' coverage claim and the investigation thereof by claims counsel. These documents reflect communications by claims counsel with others, as well as the steps taken to investigate plaintiffs' coverage claim, and "may cast light" on whether defendants acted in bad faith in their review, investigation, and denial of plaintiffs' claim. *See* Opinion and Order of Magistrate Judge King at 4, ¶ 7, *Grange Mut.*, No. 2:07-cv-1285, ECF No. 142 (ordering production of email chain relating to Chubb's internal auditing of legal services invoices). Accordingly, contrary to defendants' contention, they are relevant and discoverable under *Boone*.

Aside from the billing invoices, defendants have not identified which of the other "substantial number of the redacted documents" are "clearly not relevant" or fail to "cast light on" the bad faith claim alleged by plaintiffs. Nor can the Court discern which of the nearly 5,000 pages of documents[1] contained in the 12 binders produced by defendants to the Court are "not clearly relevant." The *unredacted* copies of the documents produced to the Court do not include notations identifying the privilege or protection asserted by defendants or whether defendants believe specific documents are not relevant.[2] In addition, the privilege logs do not reflect the privilege, protection, or relevancy of the unredacted documents. With the exception of the opinion letter and time line discussed below, the Court is unable to assess whether such documents have been properly withheld from plaintiffs in the absence of such information. *See*

---

[1] The CDs of the claims file submitted to the Court indicate there are 4,863 pages of documents.
[2] Defendants' privilege logs state that the privilege or protection for each redaction is set forth on the *redacted* documents themselves pursuant to the privilege logs' "Key to Abbreviations," but the Court's copy contains no such designations.

Fed. R. Civ. P. 26(b)(5)(A) (privilege logs should "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, would enable other parties to assess the claim"); *Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) (privilege log should contain sufficient detail to enable opposing party and court to assess whether privilege is satisfied).

Although defendants produced the claims file for an *in camera* review at the Court's directive, this does not relieve defendants of their burden to identify the specific documents they believe are "clearly not relevant" for purposes of the Court's *in camera* review. Defendants are in a superior position to know which of the nearly 5,000 documents are "clearly not relevant" despite being listed on the privilege log.[3] The task of determining which documents are "clearly not relevant" is made even more difficult for the Court because the unredacted documents produced by defendants do not indicated the privilege or protection on the face of the document or on the privilege logs. It is incumbent on defendants to specify the documents they believe are "clearly not relevant" before the Court undertakes the monumental task of reviewing the voluminous claims file in this case. Therefore, to the extent defendants claim that any other documents contained among the nearly 5,000 pages of claims file documents are "clearly not relevant," defendants should be ordered to identify such documents by Bates number, the basis for their conclusion that such documents are not relevant, and the evidence in support of their continued redaction or withholding from plaintiffs within 20 days of any order adopting this Report and Recommendation.

---

[3] For point of comparison, the Ohio Supreme Court in *Boone* reviewed only 29 documents, 744 N.E.2d at 158, and the Court in *Grange Mutual* reviewed only 12 documents *in camera*. Opinion and Order of Magistrate Judge King at 1, No. 2:07-cv-1285, ECF No. 142.

### III. Work product protection

Defendants contend that even if the *Boone* exception applies to require production of attorney-client communications contained within the claims file, disclosure of such documents is not permitted to the extent they qualify as protected work product. Defendants argue that post-lawsuit communications between counsel and defendants necessarily addressed or considered the impact of their actions or decisions on the existing lawsuit. Because these communications had a dual purpose – providing legal guidance in the anticipation of litigation and advice on a business decision – defendants contend these communications are protected. In particular, defendants cite to the opinion letter and time line prepared by claims counsel after suit was filed, but before the denial decision was made, as being protected work product. They assert the purpose of the opinion letter and time line was to provide advice on whether there were sufficient grounds to deny the claim and "exhaustively compile and examine all of the evidence uncovered" during the investigation to assist in defending the existing lawsuit. Defendants allege that because the driving force behind the preparation of these documents was the litigation, the documents are protected as work product and should not be produced.

Plaintiffs contend that none of the documents in the claims file should be protected as work product. They assert that defendants have failed to meet their burden of showing that the documents were prepared in anticipation of litigation and not in the ordinary course of business. Plaintiffs contend that defendants have not submitted evidence supporting their claim of work product protection as required by Sixth Circuit case law. Plaintiffs also contend that the reports by "claims counsel" acting in the ordinary course of business of insurance as claims adjusters cannot be said to have been prepared in anticipation of litigation to qualify for work product protection.

Unlike the attorney-client privilege issue which is governed by state law, the question of whether the claims file documents are protected as work product is governed by federal law. *In re: Prof'ls Direct*, 578 F.3d at 438; *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006). An attorney's work product is reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways. . . ." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Work product is protected to ensure that a lawyer can "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," and to allow the attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman*, 329 U.S. at 510-11. "The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *In re: Prof'ls Direct Ins. Co.*, 578 F.3d at 438 (citing *Hickman*, 329 U.S. at 510-14).

With certain exceptions, Rule 26(b)(3)[4] protects from disclosure all: (1) "documents and tangible things"; (2) "prepared in anticipation of litigation or for trial"; (3) "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Under the Federal Rules, the work product

---

[4] Rule 26(b)(3) provides:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26.

10

protection under Rule 26(b)(3) is not limited to attorneys, but has been extended to documents and tangible things prepared by or for the party and the party's representative, as long as such documents were prepared in anticipation of litigation. *Id. See Eversole v. Butler Cty. Sheriff's Office*, No. 1:99-cv-789, 2001 WL 1842461, at *2 (S.D. Ohio Aug. 7, 2001) ("Rule 26(b)(3) is not limited solely to attorneys" and "documents and things prepared by the party or his agent fall within the work product rule.") (citing 8 Wright & Miller, Federal Practice & Procedure, § 2024). Rule 26(b)(3) excludes from work product protection "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes." Advisory Committee Notes to the 1970 Amendments of Rule 26.

Whether a document has been prepared "in anticipation of litigation" and is protected work product depends on: "(1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Prof'ls Direct Ins. Co.*, 578 F.3d at 439 (quoting *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). "If a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection, but the burden is on the party claiming protection to show that anticipated litigation was the 'driving force behind the preparation of each requested document.'" *Id.* at 439 (quoting *Roxworthy*, 457 F.3d at 595, 598-99) (internal citations omitted). The Sixth Circuit has stated:

> [A] party may satisfy its burden of showing anticipation of litigation in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories, and that the showing can be opposed or controverted in the same manner.

*Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir. 2009) (internal quotation marks and citations omitted). An affidavit claiming work product protection must be specific and

11

detailed, and "application of the privilege will be rejected where the only basis for the claim is an affidavit containing conclusory statement[s]." *Id.*

Whether a party reasonably anticipated litigation at a particular point in time does not answer the question of whether a disputed document was prepared "because of" litigation. *In re Prof'ls Direct Ins. Co.*, 578 F.3d at 439. If the document was created as part of the ordinary business of a party and the ordinary business purpose was the "driving force" or impetus for creation of the document, then it is not protected by the work product doctrine. *Id.* (citing *Roxworthy*, 457 F.3d at 595). In determining whether a document has been prepared in anticipation of litigation, the Court examines the documents themselves and the context within which they were prepared. *Id. See also Grange Mut.*, 2012 WL 1340369, at *7; *In re OM Sec. Litig.*, 226 F.R.D. 579, 586 (N.D. Ohio 2005).

The opinion letter and the time line attached as an appendix thereto contain the designation "Privileged and Confidential Attorney Work Product."[5] Even though defendants have not presented affidavits, deposition testimony, or other evidence to show these documents were created in anticipation of litigation, it is evident from the content, context and timing of the opinion letter and time line prepared by claims counsel that the driving force behind their creation was plaintiffs' lawsuit. At the time these documents were created, suit had already been filed by plaintiffs. Thus, any subjective anticipation of litigation would be objectively reasonable. *In re Prof'ls Direct Ins. Co.*, 578 F.3d at 439. In addition, the opinion letter and time line reflect the attorney's appraisal of the evidence, as well as the strengths and weaknesses of the parties' respective claims. The Court is persuaded from the content and context of these documents that their primary focus is the provision of legal assistance and analysis for the

---

[5] Unlike the other unredacted documents contained in Files 7 and 8 which were provided to the Court, the opinion letter on its face specifies that defendants assert the work product protection to enable the Court to identify the basis for defendants' withholding of the documents.

pending lawsuit. The fact that these documents also serve another purpose – that of providing advice on the coverage decision – does not deprive them of work product protection. *See id.* (citing *Roxworthy*, 457 F.3d at 598-99). *See also King v. CVS Pharmacy, Inc.*, No. 1:09-CV-209, 2010 WL 1643256, at *3 (E.D. Tenn. Apr. 21, 2010) (citing cases). Therefore, all of the redacted documents contained in File 8[6] should be protected as work product and should be withheld from plaintiffs.

Defendants also assert that when counsel for defendants contacted plaintiffs' counsel in early January 2015 with their offer to enter into a tolling agreement for purposes of filing a lawsuit, it was a foregone conclusion that in the event of a denial of the claim plaintiffs would file a lawsuit challenging the denial. Defendants state that all documents prepared from that day forward were in anticipation of litigation, which actually commenced on January 8, 2015.

Unlike the opinion letter and time line discussed above, the unredacted documents contained in File 7[7] are not specifically designated as attorney work product on the face of the documents. Nor do the privilege logs identify that each of the redacted documents contains attorney work product. Thus, it is unclear whether defendants actually asserted the work product protection for each of these documents, as opposed to protection under the attorney-client privilege, or whether defendants are claiming the documents are not relevant, as with the billing invoices in the pre-lawsuit documents. To the extent that defendants asserted only the attorney-client privilege for these documents, such documents would be discoverable under the *Boone*

---

[6] **File 8: CNIC-HO-CF-026443- 035028:**
**Redacted:** 026451-453; 026454-455; 026460; 026463-465; 034283; 034385-387; 034388-389; 034485; 034507; 034526; 034540-543; 034599; 034696; 034718; 034737; 034751; 034753; 034763; 034866; 034874; 034882-034930; 034931-934; 034935-035008; 035009-014.

[7] **File 7: CNIC-HO-CF-025850- 026442:**
**Redacted:** CNIC-HO-CF-025865-888; 025935-937; 025944-945; 025959-960; 025963; 025972; 025976; 025983; 026088; 026090; 026092-211; 026119; 026140-159; 026183-184; 026189-192; 026194-214; 026215; 026219; 026223-242; 026244-262; 026265; 026299-300; 026303; 026305-312; 026313-317; 026319-20; 026322; 026324-327; 026333-334; 026335-337; 026389-392; 026411-413; 026414-415; 026427-430; 026433; 026435-438; 026442.

exception to the attorney-client privilege. In addition, if the attorney-client privilege is the only privilege asserted for any documents within File 7, defendants have waived protection under the work product doctrine by not specifically asserting the protection. *See Banks v. Office of Senate Sergeant-at-Arms*, 241 F.R.D. 376, 386 (D.D.C. 2007) (citing *Carey-Canada v. Cal. Union Ins. Co.*, 118 F.R.D. 242, 248-49 (D.D.C. 1986)) (where party fails to assert privilege on privilege log, privilege is waived). *See also Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*, 254 F.R.D. 216, 221, *order clarified*, 254 F.R.D. 238 (E.D. Pa. 2008) ("Failure to assert a privilege properly may amount to a waiver of that privilege.") (internal citations omitted); *Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, Inc.*, 130 F.R.D. 28, 32 (S.D.N.Y. 1990) (party's failure to "specify work product as the particular privilege" constituted a waiver of that privilege). The burden is on defendants to identify the documents for which they seek work product protection and to present evidence showing the documents were created because of the prospect of litigation, as opposed to an ordinary business purpose. *Biegas*, 573 F.3d at 381. Without any evidence or explanation from defendants as to why the documents in File 7 constitute work product, as opposed to documents created in the ordinary course of business, the Court is unable to conclude they should be withheld as work product simply by reviewing the content of such documents.[8] Therefore, to the extent defendants claim that any documents contained in File 7 are protected as work product, defendants should be ordered to identify such documents by Bates number, the basis for the work product protection, and the evidence in support of their continued withholding from plaintiffs within 20 days of any order adopting this Report and Recommendation.

---

[8] For example, one billing invoice document appears to have been created after the lawsuit was filed, but it refers to line items that predate the filing of the lawsuit.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Court find the *Boone* exception to the attorney-client privilege applies to the claims file in this case;

2. The opinion letter and time line documents contained in File 8 (see note 6, *supra*) be protected as work product and withheld from plaintiffs.

3. All other claims file documents be produced to plaintiffs unless, within 20 days of any Order adopting the above two recommendations:

    a. Defendants identify by Bates number the documents they assert are "clearly not relevant" to the claims in this case, the basis for their conclusion that such documents are not relevant, and the evidence in support of their continued redaction or withholding from plaintiffs.

    b. Defendants identify by Bates number any documents contained in File 7 they assert are protected as work product, the basis for the work product protection, and the evidence in support of their continued withholding from plaintiffs.

Date:  10/14/2015                              s/Karen L. Litkovitz
                                                                     Karen L. Litkovitz
                                                                     United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JEFFREY DECKER, et al.,                        Case No. 1:15-cv-88
    Plaintiffs,                                    Dlott, J.
                                                     Litkovitz, M.J.
   vs.

CHUBB NATIONAL INSURANCE CO., et al.,
    Defendants.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).